IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. HANSEL M. DeBARTOLO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:09-cv-0039 |
| v. ) | |
| ) | Magistrate Judge Maria Valdez |
| HEALTH AND WELFARE ) | |
| DEPARTMENT OF THE ) | |
| CONSTRUCTION AND GENERAL ) | |
| LABORERS' DISTRICT COUNCIL OF ) | |
| CHICAGO AND VICINITY, ) | |
| ) | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

This case presents claims under the Employee Retirement Income and Security Act of 1974, 29 U.S.C. § 1001, *et. seq*. ("ERISA"), and state law. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The defendant's Motion for Summary Judgment [Doc. No. 45] is now before the Court. For the following reasons, Plaintiff Hansel M. DeBArtolo's ERISA claims are dismissed with prejudice and the defendant's motion is granted with respect to the state law claims.

## BACKGROUND FACTS[1]

The defendant in this case is a multi-employer group health fund (the "Fund") covered by ERISA and maintained by a Board of Trustees composed of equal numbers of employee and employer trustees. Def.'s N.D. Ill. L.R. 56.1(a)(3) Statement of Facts ("Def.'s Facts") ¶ 1. The

---

[1]Unless otherwise noted, the facts relied upon are undisputed or have been deemed admitted pursuant to Local Rule 56.1, which this Court strictly enforces. *See* N.D. Ill. L.R. 56.1.

Fund pays benefits, including benefits for medical services, for eligible participants pursuant to a plan of benefits (the "Plan"). *Id*. ¶ 5.

Steven Vasicek was a member of the Fund and a participant in the Plan in October 1999. *Id*. ¶ 9. On October 10, 1999, he assigned his rights to certain medical benefits due from the Fund to the plaintiff, Dr. Hansel DeBartolo. Pl.'s N.D. Ill. L.R. 56.1(b)(3)(C) Statement of Additional Facts ("Pl.'s Facts") ¶ 10. He was scheduled to receive medical treatment from DeBartolo the next day. *Id*.

Before Vasicek's appointment on October 11, 1999, DeBartolo contacted a representative of the Fund by telephone. *Id*. ¶ 11. During the resulting conversation, DeBartolo asked if Vasicek was covered under the Plan, and informed the Fund's representative that Vasicek had assigned his rights to certain medical benefits due from the Fund to him. *Id*. ¶¶ 10, 11. In response, the Fund's representative verified that Vasicek was a Plan participant but did not inform DeBartolo that the Plan prohibited such assignments of medical benefits. *Id*. ¶ 11. The telephone conversation then ended, and DeBartolo provided medical treatment to Vasicek. Def.'s Facts ¶ 10. He billed Vasicek $2,125.00 for the treatment provided and submitted a claim for payment to the Fund. *Id*.

The Fund received DeBartolo's claim on October 18, 1999, and reviewed the claim. *Id*. ¶¶ 10, 11. On February 1, 2000, a Fund representative contacted DeBartolo by telephone and requested that he reduce the amount of his claim because it exceeded the usual and customary charges allowable under the Plan for the types of medical services DeBartolo performed on Vasicek. *Id*. ¶ 11. DeBartolo refused to reduce his charge. *Id*. Two days later, on February 3, 2000, the Fund partially denied DeBartolo's claim. *Id*. ¶ 14. It directly paid DeBartolo $595.00

for the claim and denied the remaining $1,530.00 as excessive of the usual and customary charges for such services. The Fund notified DeBartolo and Vasicek of its determination by letter the same day. *Id*. ¶ 14.

DeBartolo says he requested an internal administrative review of the Fund's decision and a copy of the Plan the same day – February 3, 2000 – in a letter of his own. Pl.'s N.D. Ill. L.R. 56.1(b)(3)(B) Response to Def.'s Facts ("Pl.'s Resp.") ¶ 18. The Fund claims to never have received that letter; instead, it says DeBartolo's letter dated July 21, 2004 was the first communication it received from DeBartolo regarding his requests for administrative review of the Fund's decision and a copy of the Plan. Def.'s Facts ¶ 18. The Fund wrote to DeBartolo on August 9, 2004, and stated that his request for administrative review was untimely. *Id*. ¶ 19. It did not send him a copy of the Plan. *Id*. ¶ 19.

Over the next several years, DeBartolo repeated his request for administrative review of the Fund's decision. For example, DeBartolo sent a letter dated November 28, 2005 to the Fund that requested that the claim be processed according to the Plan.[2] *Id*. ¶ 21. The defendant answered that letter – and reiterated its position that any request for administrative review of the Fund's decision was untimely – on December 20, 2005. *Id*. Another letter was sent from DeBartolo to the Fund on June 22, 2006. *Id*. ¶ 22. The June 22, 2006 letter referenced a letter dated January 10, 2006, and stated that DeBartolo had first made a request for administrative

---

[2]The November 28, 2005 letter mentions that DeBartolo made a request for an administrative review on August 1, 2005. *See* Def.'s Facts, Ex. N. But DeBartolo failed to attach any information regarding that alleged request to his motion or otherwise elaborate on it, so the Court will disregard it for purposes of this motion.

review of the Fund's decision on February 3, 2000.[3] *Id*. The Fund claims it did not receive that January 10, 2006 letter and that June 22, 2006 was the first occasion it learned that DeBartolo believed he had made a request for administrative review on February 3, 2000. *Id.*

Correspondence between the parties continued throughout the remainder of 2006 and into 2007. On December 18, 2006, DeBartolo called the Fund to inquire about the status of his claim. *Id*. ¶ 23. In response, the Fund re-sent to DeBartolo letters it had previously mailed that explained that, as far as the Fund was concerned, DeBartolo's request for administrative review was untimely. *Id*. Two more letters requesting administrative review of the Fund's decision followed from DeBartolo on January 11, 2007 and February 12, 2007. *Id*. ¶¶ 24, 26. Those letters were answered (and denied as untimely) on January 24, 2007 and March 2, 2007. *Id*. ¶¶ 25, 27. DeBartolo then filed this suit on January 6, 2009 [Doc. No. 1]. He included with his complaint a copy of the assignment of medical benefits signed by Vasicek on October 10, 1999. *Id*. ¶ 28.

## **LEGAL STANDARD**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001).

---

[3]The June 22, 2006 actually states that DeBartolo first made a request for administrative review on February 10, 2000, but DeBartolo says that was a typographical error and that the correct date on his first request for review was February 3, 2000. Pl.'s Resp. 22.

However, once the movant has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The party opposing summary judgment must offer admissible evidence in support of his version of events. *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 484 (7th Cir. 1996). "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. . . . The nonmovant will successfully oppose summary judgment only when it presents 'definite, competent evidence to rebut the motion.'" *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002) (citations omitted).

## **DISCUSSION**

This case involves two claims under ERISA and state law claims for estoppel and misrepresentation.[4] One ERISA claim is for benefits and stems from the Fund's decision to paritally deny the claim DeBartolo submitted after providing medical services to Vasicek in the fall of 1999 (the "Benefits Claim"). The Benefits Claim is asserted under 29 U.S.C. § 1132(a)(1)(B). The other ERISA claim is for statutory penalties and stems from the Fund's alleged failure to provide DeBartolo with copies of the Plan in response to his written requests (the "Penalties Claim"). The Penalties Claim is asserted under 11 U.S.C. § 1132(c)(1).

The Fund has attacked DeBartolo's claims on multiple fronts. It says that DeBartolo lacks standing to assert either the Benefits or the Penalties Claim and that both are barred by the

---

[4]The Fund argues in its motion that it is not clear from the pleadings whether DeBartolo's estoppel and misrepresentation claims are based on federal or state law. DeBartolo, however, has provided the answer by admitting that his estoppel and misrepresentation claims are based on state law. *See* Pl.'s Resp. ¶ 3.

applicable statutes of limitation. In addition, it says the Benefits Claim is improper because DeBartolo failed to exhaust the Plan's internal administrative remedies and that the Penalties Claim is deficient because it is not asserted against the Plan's administrator. Finally, the Fund argues that DeBartolo's estoppel and misrepresentation claims are preempted by ERISA. The Court will begin with the Fund's arguments against DeBartolo's ERISA claims and then discuss whether DeBartolo's remaining claims are viable.

I.  **Standing**

Standing determines whether the litigant is entitled to have the court decide the merits of the dispute or particular issues. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (citations and quotation marks omitted). The general rule under ERISA is that health providers have standing to assert claims as assignees to "collect" health benefits. *Kennedy v. Connecticut Gen. Life Ins.* Co., 924 F.2d 698, 700 (7th Cir. 1991). This is because, after a plan participant has made a valid assignment of his or her benefits to a health care provider, the health care provider becomes a beneficiary as defined by ERISA. *Id*. However, a health care provider's right to recover under ERISA as an assignee depends on the health care provider having a valid and enforceable assignment agreement, *see Plumb v. Fluid Pump Service, Inc.*, 124 F.3d 849, 863 (7th Cir. 1997), and an assignment is not valid and enforceable if the plan contains an anti-assignment provision. *DeBartolo v. Blue Cross/Blue Shield of Illinois*, No. 01 C 5940, 2001 WL 1403012, at *5 (N.D. Ill. Nov. 9, 2001) (citations omitted); *see also Kennedy*, 924 F.2d at 700 ("an assignee cannot *collect* [i.e. succeed on the merits of a 29 U.S.C. § 1132(a)(1)(B) claim] unless he establishes that the assignment comports with the plan") (emphasis in original).

Applying this framework, the Fund argues that DeBartolo lacks standing to assert the Benefits and Penalties Claims because the Plan prohibits the assignment of medical benefits. In support of its argument, it points to provisions of the Plan and the summary plan description. *See* Def.'s Facts, Ex. C and Def.'s Facts, Ex. A, respectively. The language of both provisions is identical, and states, "No covered person entitled to benefits under this Welfare Plan shall have the right to assign, alienate, transfer, encumber, pledge, mortgage, hypothecate, anticipate, or impair in any manner his or her legal of beneficial interest in any assets of the Fund or benefits of this Fund." *See* Def.'s Facts, Ex. A at 111 and Def.'s Facts, Ex. C at 38. The Fund believes these clauses alone strip DeBartolo of standing, and mandate judgment in its favor.

DeBartolo, meanwhile, says there are two reasons why he has standing to assert the Benefits and Penalties Claims. The first is that the Plan and summary plan description do not clearly prohibit assignments of benefits. The second is that the Fund never informed him that such assignments were prohibited and then paid him $595.00 directly after he submitted a claim for the medical services he performed on Vasicek. Neither argument is persuasive. The Plan clearly prohibits assignments of medical benefits, so Vasicek's assignment of benefits to DeBartolo was never valid or enforceable, irrespective of the Fund's silence on the matter and direct payment to DeBartolo.

In support of his first argument, DeBartolo has higlighted language of the Plan and the summary plan description that he believes is contradictory. Specifically, DeBartolo maintains that the anti-assignment clause in the summary plan description applies only to claims for disability benefits and therefore contradicts the anti-assignment provision in the Plan, which applies to all types of claims for benefits. *Compare* Def.'s Facts, Ex. C at 38 and Def.'s Facts,

7

Ex. A at 109-111 (The anti-assignment provision in the summary plan description appears in a section titled "Standard Provisions Applicable to Group Disability Insurance" while the anti-assignment provision in the Plan appears in a section titled "General Provisions"). He says this contradiction presents a genuine issue of material fact as to whether the Plan prohibited Vasicek's assignment to him.

The Court disagrees. Although DeBartolo has accurately described the location of the anti-assignment clause in the summary plan description, the law is clear that when the language of a plan and its accompanying summary plan description conflict, the language of the plan controls, unless the plan participant or beneficiary has reasonably relied on the language of the summary plan description to his or her detriment. *Health Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703, 711 (7th Cir. 1999) (citations omitted). Here, the language of the Plan operates to prohibit assignments of benefits of all types of claims. Thus, DeBartolo's claims will be barred unless he can establish that he reasonably relied on the language of the summary plan description to his detriment. Because he has admitted that he did not receive a copy of the summary plan description until at least April 8, 2009, Pl.'s Facts ¶ 6, he cannot do so.

He has, however, argued that there is a genuine issue of material fact whether he has standing because the Fund failed to inform him that the Plan prohibited assignments of benefits and because it later mailed the $595.00 partial payment of the claim directly to him. But he has not asserted any claims under 29 U.S.C. § 1132(a)(3), which authorizes claims for "appropriate equitable relief." 29 U.S.C. § 1132(a)(3). Instead, DeBartolo's claims are asserted under 29 U.S.C. §§ 1132(a)(1)(B) and (c)(1), sections that authorize claims that can only be asserted by participants or beneficiaries on an ERISA plan. Because the Plan clearly and unambiguously

8

prohibits the assignment of benefits that Vasicek made to DeBartolo and renders him unable to become a beneficiary of the Plan, he has no standing to assert his claims. *Kennedy*, 924 F.2d at 700.

Even if he had asserted an ERISA estoppel claim under 29 U.S.C. § 1132(a)(3), the failure of a representative of the Fund to inform him that the Plan prohibited assignments of medical benefits and the Fund's payment to him would not estop the Fund from enforcing the Plan's unambiguous anti-assignment clause. *See Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 636 (7th Cir. 2007) ("statements or conduct by individuals implementing the plan can only estop an employer from enforcing the plan's written terms in extreme circumstances") (internal quotation marks omitted); *Vallone v. CNA Financial Corp.*, 375 F.3d 623, 639 (7th Cir. 2004) (oral representations as to the meaning of plan documents are only potentially relevant to an ERISA estoppel claim when the language of the plan documents is ambiguous or misleading). The Benefits and Penalties Claims are dismissed because DeBartolo lacks standing. Nevertheless, the Court will address the Fund's remaining arguments in support of its motion.

## II. Failure to Exhaust Internal Administrative Remedies/Lack of a Colorable Claim for Benefits When Requesting Documents

In addition to challenging DeBartolo's standing, the Fund has says that the Benefits Claim is barred because DeBartolo failed to exhaust the Plan's internal administrative remedies. It also argues that the Penalties Claim is barred because DeBartolo cannot establish that he had a colorable claim for benefits when he requested a copy of the Plan. DeBartolo argues that issues of fact exist as to whether he properly exhausted the Plan's internal administrative remedies, and had a colorable claim for benefits when he requested a copy of the Plan.

## A. Failure to Exhaust Internal Administrative Remedies

Exhausting the internal administrative remedies offered under a given ERISA plan is a pre-requisite to filing a claim for ERISA benefits unless the plaintiff can establish that pursuing those remedies would have been futile. *Zhou v. Guardian Life Ins. Co. of America*, 295 F.3d 677, 679-80 (7th Cir. 2002). Failure to file a request for administrative review of a decision to deny ERISA benefits within the framework outlined by a given plan can constitute a failure to exhaust one's internal administrative remedies. *Gallegos v. Mount Sinai Medical Center*, 210 F.3d 803, 808 (7th Cir. 2000).

The Fund says that DeBartolo failed to request an administrative review of the partial denial of his claim in a timely fashion. On February 3, 2000, the Fund sent DeBartolo a notice of its partial denial of benefits. Def.'s Facts, Ex. G. That notice stated that "You [DeBartolo] are entitled to a review of this benefit determination if you have any questions or do not agree. See page 105 of the policy booklet." *Id*. "Policy booklet" is a reference to the summary plan description, which explains that any administrative review needed to be requested in writing within sixty days of the date the notice of denial was received – in this case, early-April, 2000. Def.'s Facts, Ex. A at 107.

The only piece of evidence in the record DeBartolo could use to satisfy the Plan's requirements for requesting an administrative review of the Fund's decision is a letter from DeBartolo dated February 3, 2000, in which DeBartolo allegedly requested an administrative review of the Fund's partial denial of benefits and a copy of the Plan. Def.'s Facts, Ex. H. The Fund has challenged the authenticity of the letter, arguing that it never received the letter.

10

Evidence relied upon evidence at the summary judgment stage must be admissible; inadmissible evidence does not create a genuine issue of material fact. *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 484 (7th Cir. 1996). To be admissible, evidence must be authenticated. Fed. R. Evid. 901(a). Establishing the authenticity of a document is generally not a "particularly high hurdle," and the opponent of the evidence bears the burden of showing that a genuine issue of authenticity exists. *Bellino v. Mineta*, No. 04 C 7686, 2007 WL 1113518, at *4 (N.D. Ill. Apr. 9, 2007) (citation and internal quotation marks omitted).

The Fund's argues that there is insufficient evidence in the record to establish that DeBartolo sent the February 3, 2000 letter. Its has compiled a laundry list of reasons why the letter is not genuine and should not be relied upon for purposes of deciding this motion. Reply at 12-13. For example, the Fund notes that DeBartolo has not identified who typed the letter, and that the letter is dated the same day that the Fund mailed its notice of denial of benefits. Pl.'s Resp. ¶ 17, Def.'s Resp., Ex. A ¶ 6. (The Fund argues that DeBartolo's could not have mailed his letter requesting an administrative review of the Fund's decision the same day it mailed its notice of denial of benefits because the notice of denial of benefits would not yet have been delivered.) The Fund also notes that the letters "jmr" appear underneath the signature block of the letter. Def.'s Facts, Ex. H. It says those letters are the initials of Jennifer Marie Rubel, an employee of DeBartolo's that did not begin working for him until 2006 and who testified at her deposition DeBartolo has in the past dictated a letter and included a date for the letter that was prior to the date on which she typed the document. Reply, Ex. D at 17:10-13. These facts, taken together, are enough to call into question the authenticity of DeBartolo's February 3, 2000 letter. And because DeBartolo has not offered any evidence that he sent the February 3, 2000 letter on

February 3, 2000 other than his own affidavit, he has not met his burden of authenticating the letter. *Hall v. Bodine Elec. Co.,* 276 F.3d 345, 354 (7th Cir. 2002) ("self-serving affidavits, without support in the record, do not create a triable issue of fact"). The Court will not consider it for purposes of this motion.

Without the benefit of the February 3, 2000 letter, there is no evidence in the record to establish that DeBartolo requested an administrative review of the Plan's decision to partially deny his claim for benefits in a timely fashion. In fact, the first authenticated letter the Fund received from DeBartolo that requested an administrative review of the Fund's decision was not written until July 21, 2004 – well after the Plan's sixty day period for requesting administrative review had elapsed. Def.'s Facts ¶ 18. Because he failed to exhaust the Plan's internal administrative remedies, his Benefits Claim is barred.

**B.     Lack of a Colorable Claim for Benefits When Requesting Documents**

The Fund has argued that DeBartolo's lack of standing and subsequent failure to exhaust the Plan's internal administrative remedies removes his ability to establish that he had a colorable claim for benefits on July 21, 2004, the date of his first authenticated request for a copy of the Plan. To assert a claim under 29 U.S.C. § 1132(c)(1), "a plaintiff must have a colorable claim for benefits not only when he requests plan information but also on the date when the party files suit." *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 878 n. 10 (7th Cir. 2001) (citation omitted).

The Penalties Claim does not meet this standard. To begin with, DeBartolo lacks standing to assert the Benefits Claim, which means he did not have a colorable claim for benefits on any of the occasions he requested a copy of the Plan. But even if he could have asserted the Benefits Claim at one point, he failed to request an administrative review of the Fund's decision

within sixty days of receiving the notice of the partial denial of benefits. As such, he had no colorable claim for benefits, as a beneficiary or otherwise, on July 21, 2004 – the date of his first authenticated request for a copy of the Plan. One way or the other, DeBartolo's lack of standing or his subsequent failure to exhaust the Plan's internal administrative remedies bars the Penalties Claim.

## III. Statutes of Limitation

The Fund also says that both the Benefits and Penalties Claims are barred by applicable statutes of limitation. The Fund argues that the Benefits Claim is subject to and barred by the three-year limitations period set forth in the Plan and that the Penalties Claim is subject to and barred by the two-year limitations period for statutory penalties set forth in 735 ILCS 5/13-202. In opposing this position, DeBartolo has argued that his claims are subject to and fall within the ten-year limitations period for actions based on written contracts set forth in 735 ILCS 5/13-206.

### A. The Benefits Claim

A limitations period set forth in an ERISA plan is enforceable, regardless of state law, so long as it is reasonable. *Abena v. Metropolitan Life Ins. Co.*, 544 F.3d 880, 884 (7th Cir. 2008). Plan-imposed limitations periods that end before claims accrue or do not allow claimant a meaningful opportunity to file suit in the wake of protracted internal appeals processes may be deemed unreasonable. *Id*.

The limitations period set out in the Plan sets forth straightforward deadlines. It requires that a claim for benefits be submitted within ninety days after the date the medical services were rendered. Def.'s Facts ¶ 32. Then, it states that no lawsuit may filed regarding the submitted claim for at least sixty days after it is filed. *Id*. ¶ 31. Finally, it states that all lawsuits regarding

13

the submitted claim must be filed within three years of the date that the claim was required to be submitted. *Id*. Therefore, the Plan requires lawsuits regarding claims for benefits to be filed within three years and ninety days of the date that the medical services giving rise to the claim for benefits were rendered.

DeBartolo provided the medical services that underlie his Benefits Claim on October 11, 1999. *Id*. ¶ 10. Thus, the Plan's limitations framework required him to submit his claim for the benefits by mid-January, 2000 (within ninety days after the services were rendered) and file any lawsuit stemming from that claim by mid-Janaury, 2003. *Id*. ¶¶ 31, 32. The record reveals that he cleared the first hurdle by submitting a $2,125.00 claim for services rendered on October 18, 1999, *Id*. ¶ 10., but stumbled over the second by waiting until January 6, 2009 to file his complaint. So if the three-year contractual limitations period is applied, the Benefits Claim is time-barred.

The only way for DeBartolo to avoid that result is to establish that the Plan's limitations period was unreasonable. His citation to *Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan*, 713 F.2d 247, 253 (7th Cir. 1983), fails to do so. That case involved an ERISA plan that did not contain a contractual limitations period and does not account for the Seventh Circuit's recent holdings that contractual limitations periods are enforceable, *regardless of state law*, as long as they are reasonable. *See e.g., Abena*, 544 F.3d at 884 (emphasis added).

Moreover, a review of the record establishes that the three-year limitations period was more than reasonable. DeBartolo was informed that his claim had been partially denied on February 3, 2000. Def's Facts ¶ 14. That partial denial letter left him with almost three years to exhaust the Plan's internal administrative remedies and file a lawsuit based on his claim for

14

benefits. And since DeBartolo made no effort to exhaust the Plan's internal administrative procedures, the Fund's February 3, 2000 decision became final in early-April, 2000. Thus, the Court is left to decide whether a contractual limitations period that leaves more than two and half years for a claimant to file his or her ERISA claims after they are administratively denied is reasonable. It is. *See Abena*, 544 F.3d at 884 (contractual limitations that left a claimant seven months to file his claim after internal administrative remedies were exhausted was reasonable); *Doe v. Blue Cross & Blue Shield of Wisconsin*, 112 F.3d 869, 875 (7th Cir. 1997) (same conclusion when claimant was left seventeen months to file). The Plan's three-year contractual limitations period applies to and bars DeBartolo's Benefits Claim.

### B. The Penalties Claim

The Penalties Claim is different, however, because the Plan does not contain a contractual limitations period for such a claim. Thus, the Court must "borrow the limitations period of the most closely analogous state or federal statute." *Abena*, 544 F.3d at 883. Determining the applicable limitations period requires the Court, in this case, to "characterize the essence of the federal claim in question and find the most analogous cause of action in Illinois law." *Hakim v. Accenture United States Pension Plan*, 656 F. Supp. 2d 801, 817 (N.D. Ill. 2009) (citation and internal quotation marks omitted). The Fund believes that the two-year Illinois statute of limitations for statutory penalties imposed by 735 ILCS 5/13-202 should apply to and bar the Penalties Claim; DeBartolo again thinks the ten-year statute of limitations that applies to claims based on written contracts governs.

Although the Fund concedes that the Seventh Circuit has not said that state statutes of limitation for statutory penalties apply to ERISA claims under 29 U.S.C. § 1132(c)(1), it has

cited a decision from a judge in this district who believes it would if given the chance. *See Hakim*, 656 F. Supp. 2d at 822 (the Seventh Circuit has suggested that it "would apply the state statute of limitations for statutory penalty claims" to claims asserted under 29 U.S.C. § 1132(c)(1)).

The "suggestions" from the Seventh Circuit that underlie the conclusion reached in *Hakim* are revealing. *See Mondry v. American Family Mutual Insurance, Co.*, 557 F.3d 781, 806 (7th Cir. 2009) ("the purpose of [29 U.S.C. § 1132(c)(1)] penalties is to induce the plan administrator to comply with the statutory mandate rather than to compensate the plan participant for any injury she suffered as a result of non-compliance"); *Anderson v. Flexel, Inc.*, 47 F.3d 243, 247 (7th Cir. 1995) (the Seventh Circuit had an "inclination" to find that a state statute of limitations for statutory penalties applied to a 29 U.S.C.] §1132(c) claim that was irrelevant because the argument was waived). Because the Seventh Circuit has indicated that it believes that the essence of claims asserted under 29 U.S.C. § 1132(c)(1) is penal rather than compensatory, the Court will apply Illinois's two-year limitations period for statutory penalties claims to DeBartolo's Penalties Claim. *See* 735 ILCS 5/13-202; *see also Hakim*, 656 F. Supp. 2d at 822 n. 12 (collecting district court decisions that have reached the same conclusion).

Application of the two-year statute of limitations renders the Penalties Claim time-barred. The first authenticated request DeBartolo made for a copy of the Plan came on July 21, 2004. Def.'s Facts ¶ 18. Because 29 U.S.C. § 1132(c)(1) provides plan administrators thirty days to honor requests by beneficiaries or participants for plan documents, the Penalties Claim accrued in late-August, 2004, and needed to be filed by late-August 2006, at the latest. *See* 29 U.S.C. § 1132(c)(1); 735 ILCS 5/13-202. Because the Penalties Claim was not filed until January 6, 2009

16

[Doc. No. 1], it is time-barred. This finding renders the Fund's argument that the Penalties Claim is barred by laches moot.

IV. **Failure to Sue the Plan Administrator**

For the many reasons stated above, DeBartolo's Penalties Claim is improper, barred, and dismissed. Yet the Fund has one more argument against the claim – that it is not asserted against the "administrator" of the Plan. The Fund says this fact defeats the Penalties Claim as a matter of law.

Under a plain reading of 29 U.S.C. § 1132(c)(1), it applies only to "administrators." 29 U.S.C. § 1132(c)(1). Under ERISA, an administrator is "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(I).[5] Here, the Plan designated the Board of Trustees as its administrator. Def.'s Facts ¶ 34. The Board of Trustees, however, is not a defendant in the case.

The plan administrator is the proper party to sue for failing to provide plan documents. *Hightshue v. AIG Life Ins., Co.*, 135 F.3d 1144, 1149 (7th Cir. 1998). And generally, an ERISA plan itself is not liable for the statutory penalties imposed by 29 U.S.C. § 1132(c)(1). *See Jacobs v. Xerox Corp. Long Term Disability Income Plan*, 520 F. Supp. 2d 1022, 1033-34 (N.D. Ill. 2007).

DeBartolo attempts to sidestep the language of the statute and the Plan by arguing that "there is no legal distinction between [the Fund] and the Board of Trustees." Resp. 3. His argument is unsupported. Arguments that an entity is the "alter-ego" of an ERISA plan require

---

[5]If an ERISA plan does not identify an administrator, ERISA contains a framework to designate one. 29 U.S.C. § 1002(A)(16).

some sort of showing that the entity in question was created to frustrate an ERISA participant or beneficiary's ability to request documents or claim benefits. *See Jacobs*, 520 F. Supp. 2d at 1035 (citations omitted). DeBartolo has presented no evidence that even suggests, let alone establishes that the Board of Trustees was created with such a purpose in mind. Thus, he cannot establish that the Board of Trustees should be regarded as the "alter-ego" of the Plan. *Id*. The Penalties Claim is improperly asserted against the Fund instead of the Board of Trustees.

To avoid this finding, DeBartolo has requested leave to amend his complaint to name the Board of Trustees as a defendant. A court may deny leave to amend a complaint if the amendment would be futile. *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002). An amendment is futile if it would not withstand a motion to dismiss. *Vargas-Harrison v. Racine Unified School Dist*., 272 F.3d 964, 974 (7th Cir. 2001). Because DeBartolo lacks standing to assert the Penalties Claim, never had a colorable claim for benefits, and failed to file the Penalties Claim within the applicable two-year limitations period, allowing him to amend his complaint to add the Board of Trustees as a defendant would be futile. The Penalties Claim is not proper, with or without the inclusion of the Board of Trustees.

### V. Preemption of State Law Claims

Other judges in this courthouse have told DeBartolo in the past that state law estoppel and misrepresentation claims "fall squarely within ERISA's broad preemptive scope and must be dismissed." *DeBartolo v. Walmart Stores, Inc*., No 01C 5930, 2002 WL 338878, at *2 (N.D. Ill. Mar. 4, 2002) (Kocoras, J.); *see also DeBartolo v. Plano Molding Co.*, No. 01 C 8147, 2002 WL 31027963, at *2 (N.D. Ill. Sept. 10, 2002) (Coar, J.) (same). Congress has not amended ERISA to change that statutory reality, so just as DeBartolo's estoppel and misrepresentation claims

were preempted then, they are now. The Fund is entitled to summary judgment on DeBartolo's estoppel and misrepresentation claims. *Id*.

## CONCLUSION

For these reasons, Plaintiff Hansel M. DeBartolo's ERISA claims are dismissed with prejudice and the defendant's Motion for Summary Judgment [Doc. No. 45] is granted with respect to the state law claims. The parties shall appear in Court for a status hearing on September 08, 2010 at 9:30 a.m. to set at briefing schedule for the defendant's Rule 11 Motion for Sanctions [Doc. No. 53].

**SO ORDERED.**

**DATE:** **August 17, 2010**

**ENTERED:**

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**