# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DR. HANSEL M. DeBARTOLO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 09 CV 0039 |
| v. | ) | |
| | ) | Magistrate Judge |
| HEALTH AND WELFARE | ) | Maria Valdez |
| DEPARTMENT OF THE | ) | |
| CONSTRUCTION AND GENERAL | ) | |
| LABORERS' DISTRICT COUNCIL | ) | |
| OF CHICAGO AND VICINITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Attorney's Fees and Costs [hereinafter Def.'s Mtn.][Doc. No. 73], Defendant's Rule 11 Motion for Sanctions [hereinafter Def.'s Rule 11 Mtn.] [Doc. No. 53], and Defendant's Motion for Sanctions for Failure to Comply with Court Orders [hereinafter Def.'s Rule 37 Mtn.] [Doc. No. 77]. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, Defendant's Motion for Attorney's Fees and Costs [Doc. No. 73] is granted. Defendant's motions for sanctions under Rule 11 [Doc. No. 53] and under Rule 37 [Doc. No. 77] are denied.

## DISCUSSION

### I. Attorney's Fees and Related Nontaxable Expenses Under ERISA

Under Section 502(g) of the Employee Retirement Income and Security Act (ERISA) in an action by a participant, beneficiary or fiduciary, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C.§ 1132 (g)(1). In *Hardt v. Reliance Standard Life Insurance Co.*, the Supreme Court recently interpreted ERISA's fee shifting provision, holding that a court may award fees to an ERISA litigant if they have achieved "some degree of success on the merits." *Hardt v. Reliance Standard Life Insurance Co.*, 130 S.Ct. 2149, 2157-2158 (2010). This ruling supplanted the "prevailing party" standard for awarding fees in ERISA cases. *Id.; see also Young v. Verizon's Bell Atlantic Cash Balance Plan,* No. 05 C 7314, 2010 WL 4226445 at *4 (N.D. Ill Oct. 20, 2010).

There is no doubt that the Defendant achieved "some degree of success on the merits" as this Court awarded summary judgment in the Defendant's favor on all of the Plaintiff's claims. *See* Memorandum Opinion and Order [Doc. No. 61]. Once a party has achieved "some degree of success on the merits," a court must use its discretion to determine whether an attorney's fee should be granted. *Hardt*, 130 S.Ct. at 2158; *see also Young*, 2010 WL 4226445 at *6.

Prior to *Hardt*, the Seventh Circuit recognized two tests to guide a court's discretion under 29 U.S.C.§ 1132 (g)(1). *Stark v. PPM America, Inc.*, 354 F.3d 666, 673 (7th Cir. 2004) (citing *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998)). Both tests essentially ask the same question, "was the losing

party's position substantially justified and taken in good faith, or was the party simply out to harass the opponent?" *Stark*, 354 F.3d at 673 (quoting *Bowerman v. Mal-Mart Stores, Inc.*, 226 F.3d 574, 593 (7th Cir. 2000)).

The first test assesses whether the losing party's position was both "substantially justified" and "taken in good faith." *Herman v. Central States, S.E. and S.W. Areas Pension Fund*, 423 F.3d 684, 696 (7th Cir. 2005). A position is not substantially justified if it is "without a solid basis." *Prod. & Maint. Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1405 (7th Cir. 1992). Substantial justification means "something more than nonfrivolous, but something less than meritorious." *Stark v. PPM America, Inc.*, 354 F.3d 666, 673 (7th Cir. 2004). The absence of good faith describes a party that has "in an objective sense, really done nothing more than harass his opponent by putting him through the expense and bother of litigation for no good reason." *Prod. & Maint. Employees' Local 504,* 954 F.2d at 1405.

The second test analyzes the following five-factors: 1) the degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the pension plan as a whole; and 5) the relative merits of the parties' positions. *Quinn*, 161 F.3d at 478. When employing the five-factor test, not all factors need be present to conclude that an award of fees is appropriate; rather, "the five factor test

involves a weighing of the relevant factors as they apply to the facts of a particular case." *Lockrey v. Leavitt Tube Employees' Profit Sharing Plan*, No. 88 C 8017, 1991 WL 255466 at *2 (N.D. Ill. Nov. 22, 1991). The five-factor test is used to "structure or implement, rather than to contradict" the substantially justified test. *Little v. Cox's Supermarkets*, 71 F. 3d 637, 644 (7th Cir. 1995).

The five-factor test, however, is geared more toward cases where the plaintiff is the prevailing party. *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 829 (7th Cir. 1984), overruled on other grounds by *McCarter v. Retirement Plan for Dist. Managers of Am. Family Ins. Grp.*, 540 F.3d 649 (7th Cir. 2008). And, both the Seventh Circuit and the Supreme Court have questioned the test's continued vitality. *See Sullivan*, 504 F.3d at 672 (noting that the five-factor test "adds little . . . to the simpler test, and perhaps has outlived its usefulness"); *Hardt,*130 S.Ct. at 2158 (observing that because the five-factor tests used by a number of circuits "bear no obvious relation to § 1132(g)(1)'s text or to our feeshifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section").

Since *Hardt*, the Seventh Circuit has not had the opportunity to decide whether the substantial justification and five-factor tests are still relevant. Courts in this district have questioned the ongoing utility of either test.[1] However, two

---

[1]In *Raybourne v. Life Insurance Company of New York*, District Judge Gettlemen notes, "It is difficult to image the continued utility of the substantial justification test in light of *Hardt*'s adoption of the 'some degree of success' standard." *Raybourne v. Life Insurance Company of New York,* No. 07 C 3205, 2011 WL 528864, at *2, (N.D. Ill. Feb. 8,

courts have recently applied the test even though they acknowledge the continued application of the test is an open question. *See Raybourne*, 2011 WL 528864, at *2; *Young*, 2010 WL 4226445 at *9. Nonetheless, under either inquiry, an award of fees under ERISA is warranted in this case.

### a. <u>Substantial Justification Test</u>

Defendant argues that Plaintiff's claims were not substantially justified (*i.e.* did not have a "solid basis") as each of the claims "lacked both evidentiary and legal support." Defendant's Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Non-Taxable Costs [hereinafter Def.'s Mem.] at 4 [Doc. No. 73-1]. Defendant contends that the six grounds on which this Court granted summary judgment demonstrate that Plaintiff's claims were not substantially justified and were not taken in good faith. Each of the six grounds will be addressed separately below.

---

2011). Judge Gettlemen refers to Magistrate Judge Denlow's analysis in *Young v. Verizon's Bell Atlantic Cash Balance Plan*:

> Because "some success" represents the new threshold to an ERISA fee award, the substantial justification test makes little sense. If one party has experienced only some success, then the opposing party, almost by definition, has also achieved some success. If so, the opposing party's position will often be non-frivolous- that is, substantially justified. Applying a substantial justification test where the threshold for fee eligibility is only some success therefore undermines the broader eligibility for fees that should exist when the fee provision lacks a "prevailing party" requirement.

*Id.* (quoting *Young*, 2010 WL 4226445 at *10). Likewise, both Judge Denlow and Judge Gettlemen question the continued utility of the five-factor test, particularly in light of the view that the five-factors are "simply an elaboration of the substantial justification test." *Young*, 2010 WL 4226445 at *11 (citing *Sullivan*, 504 F.3d at 672); *see also Raybourne*, 2011 WL 528864, at *2.

### i.    Plaintiff 's lack of standing.

This Court found that the Plaintiff had no standing under ERISA as a participant because the Plan's anti-assignment provision "clearly and unambiguously prohibits the assignment of benefits" and rendered Plaintiff unable to become a beneficiary of the Plan. Memorandum Opinion and Order [hereinafter Mem. Opin. & Order] at 8-9 [Doc. No. 61]. Accordingly, Defendant argues that Plaintiff was not substantially justified in putting forth either the benefit claim or the penalty claim because the Plan Document clearly stated that the Plan's anti-assignment provision applied to all claims and that the Plaintiff "did not cite any cases to call into question the well-established case law that the terms of a plan document controls." Def.'s Mem at 5 [Doc. No. 73-1].

Plaintiff responds by stating that he "believed that the insured had assigned Plaintiff his right under the Plan, including the right to enforce the penalty under 29 U.S.C. Section 1132 (c)(1)." Plaintiff's Response to Rule 11 Motion for Sanctions [hereinafter Pl.'s Resp.] at 4 [Doc. No. 82].[2] However, as Defendant correctly notes, the Seventh Circuit looks to objective, not subjective, findings of substantial justification and good faith. *See Prod. & Maint. Employees' Local 504,* 954 F.2d at 1405) *; see also Anderson, Trustee on Behalf of Painters' District Council No. 30*

---

[2]Although Plaintiff's brief is entitled "Response to Rule 11 Motion for Sanctions", it appears that it is in fact Plaintiff's response to Defendant's Motion for Attorneys Fees and Costs under ERISA § 502(g)(1). The brief repeatedly references § 502(g)(1), and the brief was filed on the date that the response was due to Defendant's motion for attorney's fees. As such, this Court will treat this brief as a response to Defendant's motion for attorney's fees.

*Health and Welfare Fund v. Dergance*, No. 08 C 2522, 2009 WL 3151172, at *1, (N.D. Ill. Sept. 22, 2009) ("The absence of good faith does not require a subjective finding of bad faith, but rather describes 'a party who pursues a position without a solid basis.'") (quoting *Prod. & Maint. Employees' Local 504,* 954 F.2d at 1405). Plaintiff's subjective belief that he had a valid assignment is insufficient to demonstrate substantial justification or good faith.

Plaintiff further argues that he can establish good faith as evidenced by his use of an assignment form, required under Section 2017.40 of the Illinois Administrative Code, which "shows that Plaintiff had a good faith basis for his belief that the assignment was valid or that there was ambiguity as to whether the Plan could prohibit his assignment." Pl.'s Resp. at 4 [Doc. No. 82]. However, neither the form nor its instructions grant Plaintiff any rights of a participant with respect to the Fund. Thus, there is no objective basis for the Plaintiff to believe there was a valid assignment.

Accordingly, this Court finds that Plaintiff was not substantially justified in filing the benefit and penalty claim as the Plaintiff lacked standing under ERISA due to the Plan's anti-assignment provision.

### ii. **Failure to exhaust plan remedies**.

Additionally, this Court found that because Plaintiff failed to exhaust the Plan's internal administrative remedies, his benefits claim was barred. Mem. Opin. & Order at 12 [Doc. No. 61]. This Court deemed the February 3, 2000 letter proffered by the Plaintiff to be inadmissible as it could not properly be

authenticated. *Id.* at 11-12. Defendant argued that because of this Court's findings, the Plaintiff's benefit's claim was not substantially justified.

Plaintiff did not directly address these arguments in his response but merely reiterated, "Plaintiff produced a copy of a letter dated February 3, 2000 in which he requested an appeal and a copy of the Plan. Defendant did not respond to the letter." Pl.'s Resp. at 3 [Doc. No. 82]. As the February 3, 2000 letter was deemed inadmissible, and Plaintiff offered no other admissible evidence that he had exhausted internal administrative remedies, this Court finds that benefits claim was not substantially justified. *See Stark v. PPM America, Inc.*, 354 F.3d 666, 673 (7th Cir. 2004) (affirming that plaintiff's position was not "substantially justified" when plaintiff failed to exhaust plan remedies by not following required procedures).

### iii. Plaintiff lacked a colorable claim for benefits when he requested plan documents from the Fund.

Next, this Court determined that Plaintiff's lack of standing and his subsequent failure to exhaust the Plan's internal administrative remedies barred the penalties claim. Mem. Opin. & Order at 13 [Doc. No. 61]. Defendant argues that without a colorable benefits claim, Plaintiff was not substantially justified in pursuing the penalties claim. Plaintiff does not directly respond to this argument but offers a broad statement that he acted in good faith. Pl.'s Resp. at 5 [Doc. No. 82]. As indicated above, a subjective belief is insufficient to demonstrate substantial justification and good faith. *See Prod. & Maint. Employees' Local 504,* 954 F.2d at

1405); *Anderson*,, 2009 WL 3151172, at *1. Therefore, this Court finds that Plaintiff's penalties claim was not substantially justified as the benefits claim lacked both a legal or an evidentiary basis.

### iv. The benefit claim was barred by the Plan's three-year statute of limitations.

This Court further held that the Plan's three-year contractual limitations period applied to and barred Plaintiff's benefits claim. Mem. Opin. & Order at 15 [Doc. No. 61]. This Court explained that a limitations period set forth in an ERISA plan is enforceable, regardless of state law, as long as it is reasonable and that a review of the record established that the three-year limitations period was more than reasonable. *Id.* at 13-14 (citing *Abena v. Metropolitan Life Ins. Co.*, 544 F.3d 880, 884 (7th Cir. 2008)). Defendant argues that based on this reasoning, Plaintiff's benefits claim was not substantially justified.

Plaintiff did not address the reasonableness and applicability of the three-year statute of limitations period for the benefits claim in his Response. As such, this Court finds that Plaintiff's benefits claim was not substantially justified as it was time barred.

### v. The penalty claim was barred by the applicable state statute of limitations.

Next, this Court previously found that the application of the two-year statute of limitations rendered the penalties claim time-barred. *Id.* at 16. Defendant argues that the penalty claim was not substantially justified as a result. Def.'s Mem. at 6 [Doc. No. 73-1].

In his response, Plaintiff states that "[a]lthough the court found that a two year statute of limitations applied to this claim, Plaintiff had a reasonable belief that a ten year statute of limitations applied." Pl.'s Resp. at 5 [Doc. No. 82] (citing *Jenkins v. Local 705 International Brotherhood of Teamsters Pension Plan*, 713 F.2d 247, 253 (7th Cir. 1983)). Plaintiff elaborated that the issue of whether a 10 year statute of limitations applied was not settled in this circuit, and therefore Plaintiff's position was substantially justified. Pl.'s Resp. at 5 [Doc. No. 82].

Although there may have been a reasonable question as to which statute of limitations applied to the penalties claim, because the Plaintiff failed to exhaust internal administrative remedies for the benefits claim, there was no cognizable penalties claim. Thus, this Court finds the Plaintiff's penalties claim was not substantially justified.

### vi. The penalty claim was improperly asserted against the Fund as it was not the plan administrator.

This Court found that the penalties claim was improperly asserted against the Fund instead of the Board of Trustees. Mem. Opin. & Order at 18 [Doc. No. 61]. This Court explained that the Plaintiff's argument that there was no legal distinction between the Fund and the Board of Trustees was unsupported. *Id.* Defendant argues that this is further reason why the penalties claim was not substantially justified. Plaintiff did not address this argument in his Response. Accordingly, this Court agrees that the penalties claim was not substantially justified as it was improperly asserted against the Fund.

Because Plaintiff lacked standing to assert the benefits and penalties claim, failed to exhaust internal plan remedies, never had a colorable claim for benefits, failed to file the benefits and penalties claims within the applicable limitations period, and improperly asserted the penalties claim against the Fund which was not the Plan administrator, this Court finds that Plaintiff's ERISA lawsuit was not substantially justified. Accordingly, an award of attorney's fees is warranted. Similarly, an award of fees is also appropriate under the five-factor test.

**b. <u>Five-Factor Test</u>**

Factors 1 and 5 concern the issues of substantial justification and good faith, which have been addressed above. *See Contilli* at *3; *see also Young*, at *10 (citing *Sullivan*, 504 Fed at 672) ("As the Seventh Circuit has noted, inquiring into the relative merits of the parties' positions is simply an oblique way of asking whether the opposing party's position was substantially justified."). As previously discussed, these factors weigh in favor of awarding fees.

Factor 2 looks to the offending party's ability to satisfy a fee award. Plaintiff contends that he is not able to satisfy an award of fees but does not offer an explanation or any documentation to support his assertion. *See* Pl.'s Resp. at 7 [Doc. No. 82]. Plaintiff merely states, "If necessary, financial information can be provided under seal." *Id.* Plaintiff was given ample opportunity to provide documentation such as tax returns, W-2 statements, or bank statements to justify why he could not satisfy a fee award both in his pre-filing review of the Fund's fee claim and in his response to this motion. Plaintiff has failed to do so. Without additional

11

documentation, the Court finds that the Plaintiff has not met his burden to establish that his financial situation was a special circumstance protecting him from an order to pay fees. *See Hess v. Reg-Ellen Machine Tool Corp.*, No. 09 C 3394, 367 Fed.Appx. 687, 691 (7th Cir. 2010), *Stark III v. PPM America, Inc.*, 354 F.3d 666, 673-74 (7th Cir. 2004); *Contilli*, 2007 WL 293835, at *3. Accordingly, this Court finds that the second factor weighs in favor of an award of fees.

Factor 3 analyzes whether the award of fees would deter other persons under similar circumstances. Defendant argues, "An award of all of the Fund's fees and costs may deter Plaintiff from continuing to file frivolous lawsuits and may encourage other group health plans to resist capitulating to settlement demands based on inflated penalty claims." Def.'s Mem. at 9-10 [Doc. No. 73-1]. Plaintiff simply responds that because he "filed the action to recover fees for medical services provided, it is not clear whether an award of fees would deter persons under similar circumstances." Pl.'s Resp. at 7 [Doc. No. 82]. This Court finds that Factor 3 weighs in favor of the Defendant, even if only slightly. Awarding fees could possibly serve as a deterrent against such conduct by Plaintiff or others in similar circumstances.

Factor 4 considers the amount of benefit conferred on members of the Plan. Defendant argues that the Fund's participants will benefit if the Fund is reimbursed for attorney's fees because the award of fees will "replenish those funds which should be used to pay benefits for the plan participants." Def.'s Mem. at 10 [Doc. No. 73-1]. Plaintiff counters that any benefit would be too small to be of consequence. Pl.'s Resp. at 7 [Doc. No. 82]. This Court finds that Factor 4 weighs in

favor of awarding attorney's fees as the recovered fees would benefit the other members of the Fund. *See Contilli*, 2007 WL 2973835, at *3 (finding a clear benefit to awarding fees because "[t]he fees recovered would be made available to pay the benefits of other members, whereas the denial of attorneys' fees would cause a depletion of those same funds"); *see also Anderson*, 2009 WL 3151172, at *2 ("[A]ll plan participants benefit if the Fund is able to recover the expenses incurred during litigation.").

For these reasons, this Court finds that the balance of the five-factors weigh in favor of awarding attorney's fees to the Defendant. Under either the substantial justification test or the five-factors test an award of attorneys' fees under ERISA is appropriate. Given this determination, the next inquiry is whether the fees requested by the Defendant are reasonable.

## II. Reasonableness of Requested Fees and Costs

The district court has considerable discretion in determining the appropriate amount of a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 551 (7th Cir. 1999). The fee applicant has the burden to demonstrate to the Court that their attorneys' hourly rates and time expenditures are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In their fee petition, therefore, Defendant's attorneys are required to exercise billing judgment, which means that they must "'exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.'" *Spegon v. Catholic*

*Bishop of Chicago*, 175 F. 3d 544, 552 (7th Cir. 1999) (quoting *Hensley*, 461 U.S. at 434.).

### a. <u>Reasonable Rates</u>

To determine the reasonableness of attorneys' fees, the Defendant first bears the burden of demonstrating that the rate charged was consistent with the market rate, "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the kind of work in question." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004). Although the initial burden of proving the market rate is on the applicant, "once the attorney provides evidence of the market rate, the burden shifts to the opposing party to show why a lower rate should be awarded." *Id.* at 674-75 (citing *McNabola v. Chi. Transit Auth.*, 10 F.3d 501 (7th Cir. 1993)). "[T]he best evidence of the market value of legal services is what people will pay for it." *Id.* at 675 (citing *Balcor Real Estate Holdings, Inc., v. Walentas Phoenix Corp.,* 73 F.3d 150 (7th Cir. 1996)).

Prior to May 1, 2009, Defendant's attorneys, all from the law firm of Dowd, Block & Bennett ("DB&B"), billed at an hourly rate of $250 for partners, $200 for associates and $100 for paralegals and law clerks. In May, 2009, the rates increased to $350 for partners, $225 for associates and $100 for paralegals and law clerks. On June 1, 2009, the rates for senior associates increased to $250 per hour. *See* Def.'s Mem in Support of Atty's Fees at 12 [Doc. No. 73-1]. Defendant notes that prior to 2009, the rates had not been increased since 2003. *Id.* Defendant also indicates that

the Fund reviewed the bills as fiduciaries every two months and paid the Defendant's attorneys based on those rates. *Id.* at 11.

Defendant argues that the fact that the Fund paid the increased rates after May 2009 demonstrates that the rates are reasonable and do not exceed the market rate. *Id.* (citing *Balcor Real Estate Holdings, Inc.,* 73 F.3d at 153). Further, Defendant cites to a case from 2008 that awarded hourly rates of $400, $250, and $150 for attorneys with varying years of experience in ERISA litigation. *Id.* at 13 (citing *Pasternak v. Radek*, No. 07 C 2858, 2008 WL 2788551 at *7 (N.D. Ill. April 3, 2008).

Plaintiff does not argue that the higher rates charged after May 2009 are unreasonable or are inconsistent with the market rate. Rather, Plaintiff argues, without giving a rationale and without citing to any cases, that the Defendant should not be allowed to change their rates two months into the litigation. *See* Plaintiff's Objections to Defendant's Request for Attorney fees [hereinafter "Plaintiff's Objections"] at 1 [Doc. No. 72]. However, courts have approved reasonable rate increases. *See Choa v. Current Dev. Corp.*, No. 03 C 1792, 2009 WL 393862, at *6 (N.D. Ill, Feb. 13, 2009) (approving an increased rate of $400 from the previously approved rate of $350).

The fact that the Fund paid both the lower and higher rates offers strong support that the increased rates are consistent with the market rate. *See Stark,* 354 F.3d at 675 (finding that the best proof of a market rate is what clients are willing to pay). Further, the hourly rates billed after May 2009 are consistent with hourly

rates awarded in this District in ERISA cases. *See Pasternak*, 2008 WL 2788551 at
*7.

Plaintiff offers no contrary information to suggest the increase is
unreasonable. Accordingly, this Court finds that the hourly rates charged by DB&B
both before and after May 2009 are reasonable and will use these rates for the
purposes of this fee petition.

**b. <u>Reasonable Hours</u>**

Defendant next bears the burden of demonstrating that the number of hours
expended was necessary and reasonable. *See Hensley*, 461 U.S. at 437. In support of
their request, Defendant submitted a declaration from the partner at the firm of
DB&B, Declaration of Justin J. Lannoye [hereinafter "Declaration"] [Doc. No. 73-5],
and detailed billing records, DB&B Slip Listing [Doc. No. 73-6]. The declaration
addresses the application of billing judgment, and a description of the number of
hours that were expended on the case and an account of those hours for which
DB&B did not seek reimbursement from the Fund. These hours are identified on
the billing statements as "No Charge", and the Declaration summarizes the total
number of hours that were excluded. These hours include 39.05 hours totaling
$9,631.25 that DB&B believed were not necessary to the outcome of the case,
excessive or duplicative. *See* Declaration at 6 [Doc. No. 73-5]. Further, Defendant
argues that the reasonableness of the amount of time expended is evidenced by the
Fund's billing policy and procedure. The monthly bills from DB&B were reviewed
by the Fund's administrator and provided to the trustees for review prior to the

trustees' board meetings every two months. *Id.* Defendant contends that the fact that the Fund paid for the hours that DB&B seeks reimbursement is strong evidence that they are not excessive. Def.'s Mem. at 13[ Doc. No. 73-1] (citing *Great West Casualty Co. v. Marathon Oil Co.*, No 99 C 3101, 2003 WL 553583, at *6 (N.D. Ill. Feb. 26, 2003)).

Plaintiff objects to the number of hours requested by the Defendant for the following reasons: 1) Defendant's time spent on the briefs in support of the Motion for Summary Judgment, the Reply and the Motion for Rule 11 sanctions was excessive; 2) Defendant's time spent on conferences was excessive; 3) Defendant's time spent researching Plaintiff's other cases was unnecessary; and 4) Defendant improperly billed activities that are clerk functions at an attorney's rate. *See* Plaintiff's Objections to Defendant's Request for Attorney Fees at 2-6. [Doc. No. 72].[3] Each objection will be addressed separately.

### i. Time spent on motions and reply brief.

Plaintiff argues that the hours Defendant spent on the Motion for Summary Judgment, the Reply Brief, and the Rule 11 Motion are excessive and should be reduced by half. *See* Plaintiff's Objections at 4, 5 [Doc. No. 72]. Defendant asserts that the time spent preparing these motions and the Reply brief were necessary and

---

[3]Defendant argues that Plaintiff waived all objections to the reasonableness of rates and hours because the Plaintiff prematurely filed their objections during the Rule 53.49(d) process and that the Plaintiff did not renew these objections in their response to the request for attorneys fees. *See* Def.'s Reply at 13 [Doc. No. 84]. However, because Plaintiff filed these objections with the Court, albeit early, these objections are not waived. Further, this Court has an independent obligation to review the fee request and eliminate duplicative or excessive time. *See Lockrey v. Leavitt Tube Employees' Profit Sharing Plan*, No. 88 C 8017, 1991 WL 255466 at *5 (N.D. Ill. Nov. 22, 1991); *see also Hensley*, 461 U.S. at 434.

reasonable given the number of issues, defenses, and independent bases for rejecting Plaintiff's claim. *See* Def.'s Mem. at 14 [Doc. No. 73-1]. Further the Defendant contends that the number of hours was necessary to defeat the large liability claim and to try to recover fees and costs. *Id.*

This Court reviewed the time logs submitted by the Defendant. The Court finds no excessive, redundant or otherwise unnecessary hours with regards to preparing the Motion for Summary Judgment and the Rule 11 Motion. The billing on the Reply brief and response to Plaintiff's 56.1 statement (hereinafter "Reply brief") is a different matter. Here, the Defendant billed the Summary Judgment at 72 hours. Defendants then billed the Reply brief at 112.5 hours. Thus, the Reply Brief to the Plaintiff's Objections took longer than the Motion for Summary Judgment, the Memorandum in Support and the Rule 56.1 statement combined.

The issues raised in summary judgment were numerous but not overly complex. The arguments made in the Reply brief, although well done, were not more comprehensive than those made in the moving papers. And, of course, Reply briefs are designed to only address those matters raised in the opposition papers. Plaintiff's opposition to summary judgment did not raise unforeseen matters nor was it uncommonly profound. As a result, the Court will reduce the time compensable for the Reply brief by slightly less than 50% – 56 hours will be allowed. *See Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999) (reduction in fee award allowed where the district court found time spent on

summary judgment motion excessive given the simplicity of the subject matter and the quality of the motion).

As such, this Court finds the following requested hours reasonable: 72 hours for the Motion for Summary Judgment; 56 hours for the Reply Brief and Response to DeBartolo's Statement of Facts; and 13.45 hours for researching and drafting the Rule 11 motion.

### ii.    Objection based on duplicative work at conferences.

Plaintiff raises objections to two categories of alleged duplication of effort. The first concerns a settlement conference were two attorneys for the Defendant appeared, and the second involves Plaintiff's objection that two attorneys should not be allowed to bill for the same conference, stating, "[o]nly one attorney should be allowed to bill for the conference." Pl.'s Objections at 2-6, [Doc. No. 72].[4] Defendant argues that the objection should be overruled, and they cite to the case of *Lifchez v. Hartigan*, No. 82 C 4324, 1991 WL 96435 at *4 (N.D. Ill May 31, 1991), which held that "[a]ttorneys are entitled to recover fees for conference hours, as long as the time spent conferring is reasonable." But, the *Lifchez* decision does not stand for the proposition that duplicative effort is compensable. In fact, the court in *Lifchez* found that four attorneys were entitled to recover all reasonable fees billed where "the

---

[4] Plaintiff identifies objections to time entries dated January 22, 2009; May 8, 2009;May 12, 2009; June 5, 2009; January 5, 2010; January 29, 2010; February 2, 3, 4, 5, 8 and 16. Plaintiff argues that only the time noted under JJL is compensable or only half of the time is compensable. *See* Plaintiff's Objections [Doc. No. 72; Doc. No. 73-3].

time records submitted indicate that the attorneys legitimately divided up the labor among themselves." *Id.*

Plaintiff's assertion that the time spent by two attorneys doing the same work can be duplicative has some general support in law. *See Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, No. 08-4267, 574 F.3d 852, 858 (7th Cir. 2009)("Though efficiency can sometimes be increased through collaboration . . . overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees."). Cases involving complex matters or novel issues of law may legitimately require a number of lawyers to staff the litigation. *See Dupuy v. McEwen*, 648 F.Supp.2d 1007, 1021 (N.D. Ill.2009) (reduction in fee award not warranted based on allegedly duplicative efforts of senior attorneys due to complexity of case; and although several attorneys devoted time to same issue, attorneys were not duplicating work, but rather doing complementary work). Even cases that are run-of-the-mill may potentially require duplication of effort in order to provide effective legal representation. *See Lenard v. Argento*, 808 F.2d 1242, 1245 (7th Cir. 1987) (the court refused to lay down a flat rule of one lawyer per case).

Here, Defendants do not argue that this case was complex, novel or would have otherwise required more than one lawyer at the helm for any given task. As a result, the Plaintiff's objections are sustained. The Court finds that based on this record only one attorney per task will be allowed – the attorney who carried the laboring oar on the task is the attorney whose time is compensable.

The determination of the appropriate calculation of fees to be awarded in light of this ruling is difficult given the structure of the Defendant's billing records. The records are itemize by date and attorney but are otherwise bundled with tasks other than the objected-to item so as to make a determination too difficult. The Court directs the Defendant to submit a revised itemization of the entries noted in Plaintiff's objections [Doc. No. 73-3], and as recounted in footnote 4 of this Memorandum Opinion and Order, within fourteen (14) days of this Order.

### iii. Time spent researching Plaintiff's other cases.

Plaintiff argues that the time spent drafting, reviewing and researching a list of cases filed by Plaintiff and their outcomes is not relevant to the present case, and these hours should be reduced by approximately half. *See* Plaintiff's Objections at 2, 3 [Doc. No. 72]. The hours in question are 4.55 hours from January 27, 2009 drafting a list of Plaintiff's other cases and outcomes, .70 hours from January 27, 2009 reviewing the information on the cases filed; and 1.60 hours from June 1, 2009 researching additional cases filed by the Plaintiff. After review of the billing sheets, the Court finds that counsel's familiarizing themselves with Plaintiff's positions in other litigation has some marginal utility so that these small hours are reasonable.

### iv. Clerk activities billed at an attorney's rate.

Plaintiff contests 1.80 hours billed on May 23, 2009 for drafting a notice of filing and certificate of service. Plaintiff argues that these activities are clerk functions and should not be billed at an attorney's rate. However, after reviewing the billing statements, these 1.80 hours were in fact billed at the lower, law clerk

rate of $100.00 and not an attorney rate. Thus, the Court found no error in the billing statement and finds that these 1.80 hours billed at the rate of $100.00 to be reasonable.

The next issue is the reasonableness of nontaxable expenses requested by the Defendant.

**c. <u>Related nontaxable expenses</u>**.

Defendant seeks reimbursement for $714.24 for the following nontaxable expenses: $629.95 for LEXIS charges,$72.80 for PACER charges, and $11.49 for postage. Declaration at 11 [Doc. No. 73-5]. Federal Rule of Civil Procedure ("Rule") 54(d)(2) provides that: "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages . . ." Fed. R. Civ. P. 54(d)(2)(A).

The Seventh Circuit considers computerized research costs to be a part of attorney's fees that are compensable when attorney's fees are otherwise appropriate. *Riley v. Argonaut Midwest Holdings, LLC*, No. 06 C 5026, 2007 WL 2908824, at *2 (N.D. Il. Oct. 4, 2007) (citing *Haroco, Inc., v. Am. Nat'l Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1440 (7th Cir. 1994). Further, expenses such as postage that are ordinarily billed separately to the client but are not included in attorney's fees as overhead are also compensable in ERISA fee petitions. *Huss v. IBM Medical and Dental Plan*, No. 07 C 7028, 2010 WL 2836743, at *7 (N.D. Ill. July 15, 2010) (citing *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir. 1984); *see also Heiar v. Crawford County, Wis.*, 746 F.2d 1190, 1203 (7th Cir.1984) (including

22

costs for postage and copying as part of a reasonable attorneys' fee under 42 U.S.C.
1988); *Hitchcock v. G & W Elec. Co.*, No. 85 C 0667, 1989 WL 2061, at *2 (N.D. Ill.
Jan. 5, 1989) (applying *Heiar and Henry* to 29 U.S.C. 1132(g)(1) ERISA fee claims).

The Plaintiff did not contest the nontaxable expenses for legal research and
postage requested by the Defendant. After reviewing the documents submitted by
the Defendant in support of the LEXIS, PACER and postage charges, this Court
finds that the requested $714.24 in related nontaxable expenses is recoverable and
reasonable. Therefore, this Court awards Defendant $714.24 in nontaxable
expenses.

## III. Rule 11 Motion for Sanctions

In addition to the motion for fees and costs, the Defendant also filed a  Rule
11 motion for sanctions. Under Rule 11, a district court may impose sanctions on
lawyers or parties (or both) for submissions that are filed for an improper purpose
or without a reasonable investigation of the facts and law necessary to support their
claims. Fed. R. Civ. P. 11(b)(c). These sanctions may include attorneys' fees and
costs. Fed. R. Civ. P. 11(c). One of the purposes of Rule 11 is to deter baseless filings
in the district court. *Jimenez v. Madison Area Technical College*, 321 F.3d 652, 656
(7th Cir. 2003). The Seventh Circuit instructs that Rule 11 sanctions "are to be
imposed sparingly, as they can 'have significant impact beyond the merits of the
individual case' and can affect the reputation and creativity of counsel." *Hartmax
Corp. v. Abbound*, 326 F.3d 862, 867 (7th Cir. 2003) (quoting *Pacific Dunlop
Holdings, Inc.*, 22 F.3d 113, 118 (7th Cir. 1994)).

Defendant seeks sanctions in the form of full attorneys fees and costs. As this Court has already found Plaintiff liable for attorney's fees under ERISA, the remaining issue is whether Plaintiff's counsel, Terri Blanchard, and her law firm, Barclay, Dixon & Smith, P.C., also should be held jointly and severally liable for fees as a deterrent. *See Thorton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986).

### a. <u>Improper Purpose</u>

Defendant argues that Rule 11 sanctions are appropriate because the Plaintiff and his attorney filed this lawsuit for the improper purpose of coercing the Defendant to pay a monetary settlement and not to redress a legitimate controversy. Defendant asserts that Plaintiff waited almost nine years after he allegedly requested Plan documents before filing this lawsuit in order to inflate the $110 per day statutory penalties he could claim under ERISA § 502(c)(1). Memorandum of Law in Support of Defendant's Rule 11 Motion for Sanctions [hereinafter Def.'s Rule 11 Mem.] at 2 [Doc. No. 80].

To prove an improper purpose, Defendant points out that Plaintiff has filed 24 cases (including this one) in the Northern District of Illinois seeking a small amount of damages under ERISA § 502(a)(1)(B) and large statutory penalties under ERISA § 502(c)(1). *Id.* at 4. The Defendant requested Plaintiff turn over settlement agreements in the cases that settled to further demonstrate that this suit was filed for an improper purpose. Defendant contends, "Based on his refusal to turn over the documents and his pattern of filing these baseless suits, the Court should infer that

the documents would support the Fund's contention that this suit was filed for an improper purpose." *Id.*

Plaintiff responds that he filed this lawsuit because he was attempting to recover money owed to him. Plaintiff's Response to Defendant's Rule 11 Motion for Sanctions at 3 [hereinafter Pl.'s Rule 11 Resp.] [Doc. No. 86]. He explains that he waited nine years to file the suit because he operates a single practitioner medical practice, has no system for following up on unpaid accounts and does so sporadically. *Id.* Further, Plaintiff contends that when he went through all of his old files, he did not have a copy of the Plan, did not know the amount due from the Defendant and chose to sue the Defendant rather than the patient as he knew patient had no financial means to pay the balance owed. *Id.* Additionally, Plaintiff responds that he did not produce additional settlement agreements because he did not have them. *Id.* He explains that he produced all settlement documents in his possession and those agreements show that Plaintiff was primarily attempting to collect for medical services he provided. *Id.*

The test of Rule 11 is objective. *Thorton v. Wahl*, 787 F.2d 1151, 1155 (7th Cir. 1986). Courts must determine if there is sufficient evidence in the record to show an improper purpose when imposing Rule 11 sanctions. *See Vollmer v. Selden*, 350 F.3d 656, 661 (7th Cir. 2003) (vacating the imposition of Rule 11 sanctions, finding that there was not sufficient evidence in the record to show the improper purpose of coercing a fee). Although Defendant points to 24 cases that Plaintiff filed before the Northern District Court, Defendant failed to demonstrate that any of those cases

were adjudged to be frivolous by the district court. Defendant's speculation that these cases were filed for an improper purpose is insufficient to impose Rule 11 sanctions. *See Vollmer*, 350 F.3d at 662.

Further, this Court cannot justifiably infer from Plaintiff's failure to submit all the settlement documents that Plaintiff filed this suit for an improper purpose. Plaintiff explained his lack of compliance, *i.e.* the documents were not in his possession, and there is insufficient evidence to prove otherwise. Additionally, Plaintiff argued that he provided settlement documents that were in his possession, and those agreements demonstrate that Plaintiff was primarily attempting to collect for medical services he provided. Pl.'s Rule 11 Resp. at 4 [Doc. No. 86]. Defendant does not address this argument in its reply or point to anything in the settlement agreements Plaintiff did provide which indicate an improper purpose. Accordingly, imposition of Rule 11 sanctions is not warranted on this basis.

### b. <u>Insufficient Legal or Evidentiary Support</u>

Alternatively, Defendant argues that Rule 11 sanctions are appropriate because the Plaintiff and his attorney pursued claims without sufficient legal or evidentiary support. As previously noted, the test of Rule 11 is objective. *Thorton*, 787 F.2d at 1155. When an attorney fails to make an "objectively reasonable investigation of the facts underlying a claim or the applicable law," Rule 11 sanctions are justified. *Gottlieb v Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). However, when an attorney's inquiry is "objectively reasonable under the circumstances of the case," Rule 11 sanctions are not warranted. *Id.*

Although this Court finds that the Plaintiff's claims were not substantially justified under ERISA § 1132 (g)(1), (*i.e.* the claims were "something more than non-frivolous, but something less than meritorious," *Herman* 423 F.3d at 696), the claims were not so obviously frivolous or objectively unreasonable as to warrant Rule 11 sanctions. *See Harlyn Sales Corp. Prof Sharing Plan v. Kemper Fin. Serv., Inc.*, 9 F.3d 1263, 1270 (7th Cir. 1993) (citing *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 932 (7th Cir. 1989) ("[S]anctions do not inevitably flow from being wrong on the law. Otherwise Rule 11 sanctions would be imposed whenever a complaint was dismissed, thereby transforming it into a fee shifting statute under which the loser pays. This circuit has made it clear the Rule may not be so interpreted.")

Defendant argues that the Complaint itself supports Rule 11 sanctions because Plaintiff's counsel failed to properly investigate the legal and factual bases of Plaintiff's claims. Def.'s Rule 11 Mem. at 7 [Doc. No. 80]. Plaintiff's counsel responds that Plaintiff provided her with a copy of an assignment form; proof of a partial payment from Defendant to Plaintiff for medical services; and proof that Plaintiff had sent a letter to Defendant requesting a copy of the Plan and seeking to appeal the underpayment for medical services he provided. Pl.'s Rule 11 Resp. at 5 [Doc. No. 86]. As such, Plaintiff's counsel contends that she reasonably believed that Plaintiff had been given a valid assignment, that Defendant had failed to pay for medical services rendered and that Defendant had failed to produce the Plan to Plaintiff even though Plaintiff had an assignment. Further, Plaintiff's counsel

argues that she reasonably believed that both claims had a 10 year statute of limitations, that was about to expire. *Id.* at 6.

In determining whether to impose Rule 11 sanctions, courts focus on what counsel knew at the time the complaint was filed, not on what was revealed subsequently in discovery. *Corley v. Rosewood Care Center, Inc.*, 388 F.3d 990, 1014 (7th Cir. 2004). This Court finds that Plaintiff's counsel was objectively reasonable in filing the complaint, even though the claims were ultimately unsuccessful. *See Id.* ("The fact that the underlying claim turned out to be groundless does not necessarily mean that Rule 11 sanctions are appropriate (much less required).").

Next, Defendant argues that Plaintiff's response to Defendant's Proposed Rule 11 Motion violated Rule 11 because "[a]fter receiving notice of the Complaint's many fatal defects, Debartolo and his attorneys had a duty to avoid reaffirming the contentions found in the Complaint." Def.'s Rule 11 Mem. at 9-10 [Doc. No. 80]. Plaintiff's counsel says that in response to Defendant's allegation the Plaintiff had the wrong name for the Defendant, she filed an amended complaint reflecting the different name. Pl.'s Rule 11 Resp. at 8 [Doc. No. 86]. Further, she produced a copy of the letter appealing the decision within the 60 days required by the Plan, a copy of a document showing the assignment, and evidence that Plaintiff was paid directly by Defendant because of this assignment form. *Id.* Additionally, she reaffirms that she believed that Plaintiff had a good faith argument regarding the Plan's three year statute of limitations, and a good faith belief that the statue of limitations for the penalties claim was governed by the state's 10 year statute of limitations for breach

28

of contract. *Id.* at 9. Again, this Court finds that Plaintiff's counsel's response was objectively reasonable even if her arguments were ultimately unsuccessful.

Defendant then argues that Plaintiff violated Rule 11 by failing to dismiss the lawsuit after discovery disclosures. Plaintiff's counsel argues that she believed she had a good faith argument regarding the Plan's three year statue of limitations; she believed she had a good faith argument that the board of Trustees of Defendant and Defendant are the alter ego of each other, and that Plaintiff confirmed to her that the February 3, 2000 letter had not been backdated. *Id.* at 10. This Court finds that Plaintiff's counsel's arguments were not so objectively unreasonable as to warrant Rule 11 sanctions.

Finally, Defendant argues that Plaintiff's response to Defendant's Motion for Summary Judgment supports Rule 11 sanctions. Defendant contends that the following arguments in Plaintiff's Summary Judgment response were frivolous: (1) that the Board of Trustees for the Defendant is the alter ego of the Defendant; (2) that the 10 year statute of limitations should apply to both the statutory penalties claim and the claim for benefits; (3) that Plaintiff's state law claims fell within an exception to ERISA's preemption doctrine; and (4) that the anti-assignment clause was ambiguous because it appeared to apply to Group Disability Insurance. Def.'s Rule 11 Mem. at 11-12 [Doc. No. 80]. This Court finds that although these arguments were unpersuasive, they were not so obviously frivolous as to justify Rule 11 sanctions.

For these reasons, Defendant's motion for Rule 11 sanctions is denied.

## IV. Rule 37 Motion for Sanctions

Defendant also filed a Rule 37 motion for sanctions due to the Plaintiff's repeated failure to comply with this Court's orders compelling him to produce settlement agreements between Plaintiff and other health funds. Defendant requests that this Court find that Plaintiff filed suit against Defendant for an improper purpose under Rule 37. Def.'s Rule 37 Mtn. at 1 [Doc. No. 77].

Federal Rule of Civil Procedure 37(b)(2) provides a court with authority to impose sanctions on a party that "fails to obey an order to provide or permit discovery." A court's choice of sanction is discretionary, *Langley v. Union Electric Co.*, 107 F.3d 510, 513 (7th Cir.1997), but is not without limits – the punishment must fit the crime. *Id.* at 515 . The rule also allows a court to order the contumacious party to pay reasonable expenses, including attorney fees. Fed.R.Civ.P. 37(b)(2)(C).

Although the Plaintiff delayed compliance (or delayed confirming that he could not comply) with this Court's order to provide the settlement documents, the Court chooses not to sanction the Plaintiff under Rule 37. This Court has already determined that the Plaintiff will be paying a substantial amount in attorney's fees to the Defendant. Any additional sanction will not have a significant added value. Accordingly, Defendant's motion for Rule 37 sanctions is denied.

## <u>CONCLUSION</u>

For the reasons stated, Defendant's Motion for Attorney's Fees and Costs [Doc. No. 73] is granted. The amount of fees will be determined upon the filing of Defendant's revised billing statement. The statement shall be filed within fourteen (14) days of this Order and shall be consistent with this Order. The Court further finds that the Defendant is entitled to $714.24 in related nontaxable expenses. Defendant's Rule 11 Motion for Sanctions [Doc. No. 53] and Defendant's Motion for Sanctions for Failure to Comply with Court Orders [Doc. No. 77] are denied.

**SO ORDERED.**                                **ENTERED:**

**DATE:  March 28, 2011**          _____
                                                **HON. MARIA VALDEZ**
                                                **United States Magistrate Judge**